7 F.3d 237
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Angela D. WILSON, Plaintiff-Appellant,
v.
Margaret HAMBRICK; et al., Defendants-Appellees.
 No. 92-6129.
 United States Court of Appeals, Sixth Circuit.
 Sept. 30, 1993.
 
 Before: KENNEDY and NORRIS, Circuit Judges; and ENGEL, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 A federal prisoner, Angela D. Wilson, appeals pro se the district court's dismissal of her Bivens action after concluding, pursuant to 28 U.S.C. § 1915(d), that it is frivolous.
 
 I.
 
 2
 Wilson, a black woman, is currently incarcerated at the Federal Medical Center (FMC), an all-female institution in Lexington, Kentucky. In 1992, she filed, pro se, a complaint asserting a violation of her civil rights by the following defendants: (1) Margaret Hambrick, the warden of FMC; (2) Richard Harliss, the manager of her unit; (3) Sandra Alston-Williams, her case manager; (4) Gill Ingram, Regional Director of the Mid Atlantic Region of the federal Bureau of Prisons (BOP); (5) Michael Quinlan, Director of the BOP; and (6) William Barr, Attorney General of the United States.
 
 
 3
 Her complaint raised two principal claims. First, she alleged a violation of her Eighth Amendment right to be free from cruel and unusual punishment because she is a nonsmoker housed in a smoke-filled environment with inadequate ventilation, which causes her hypertension, a sore throat, eye and skin irritation, headaches, coughing, and other breathing difficulties. She also asserted that her health was jeopardized by the presence of asbestos and lead-based paints.
 
 
 4
 As her second claim, Wilson charged that BOP violated her equal protection rights by discriminating against females, blacks, and Hispanics with regard to placement in correctional camps, clothing options, freedom of movement, emergency health care, job opportunities, and other rights and privileges.
 
 
 5
 After granting Wilson leave to proceed in forma pauperis, a magistrate judge recommended that the district court dismiss her complaint sua sponte and before responsive pleadings, under 28 U.S.C. § 1915(d).[1] The magistrate judge interpreted the complaint as a Bivens action because it was brought against federal officials, see Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971), and concluded that the pleadings were insufficient to establish that the named defendants proximately caused Wilson's alleged injuries and that she had failed to set forth the factual basis of her claim.
 
 
 6
 Wilson objected to the magistrate judge's recommendation. The objections provided greater specificity to several of her claims, for example, that she had contacted each of the named defendants and they had refused her relief, thereby suggesting their deliberate indifference to her physical well-being. See Estelle v. Gamble, 429 U.S. 97, 104 (1976). In addition, she explained that she had been allergic to cigarette smoke since childhood and had required emergency medical care for breathing difficulties related to smoke exposure. She also alleged that she had visited the prison infirmary several times complaining of coughing and a throat infection due to the air quality at FMC.
 
 
 7
 Wilson conceded that FMC has a policy designed to limit smoking to designated areas, but maintained that the warden has consistently failed to enforce that policy. She expressed fears about the long-term health effects of ambient cigarette smoke.
 
 
 8
 To support her equal protection claim, Wilson submitted that women at FMC were subject to a system of "controlled movement" and could not wear denim, while men at other facilities were not bound by such restrictions. She also insisted that whites and men more easily obtained placement in correctional camps, comparing her wait of over fifteen months to the three-week wait of fellow inmate Leona Helmsley.
 
 
 9
 The district court rejected Wilson's objections and dismissed the complaint without prejudice because it was frivolous within the meaning of 28 U.S.C. § 1915(d).
 
 II.
 
 10
 We examine a district judge's dismissal of a pro se in forma pauperis complaint as frivolous under an abuse of discretion standard of review. Denton v. Hernandez, 112 S.Ct. 1728, 1734 (1992). The fact that an in forma pauperis complaint fails to state a claim upon which relief could be granted under Fed.R.Civ.P. 12(b)(6) does not automatically warrant a sua sponte dismissal as frivolous pursuant to § 1915(d). Neitzke v. Williams, 490 U.S. 319, 331 (1989). The standards for a frivolousness dismissal are a "lower hurdle" for the pro se litigant to clear. Lawler v. Marshall, 898 F.2d 1196, 1198 (6th Cir.1990).
 
 
 11
 Specifically, a district court may dismiss an in forma pauperis complaint as frivolous if it "lacks an arguable basis either in law or in fact." Neitzke, 490 U.S. at 325. The complaint lacks a basis in law when it depends upon an "inarguable legal conclusion," id., and it lacks a basis in fact when the facts alleged are "clearly baseless," "fanciful," or "delusional." Denton, 112 S.Ct. at 1733.
 
 
 12
 At the same time, however, § 1915(d) "accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." Neitzke, 490 U.S. at 327.
 
 
 13
 In light of these standards, we conclude that the district court abused its discretion in dismissing Wilson's Eighth Amendment claim of exposure to environmental tobacco smoke (ETS). While the district judge sympathized with her complaints, he said that he was aware of no case law mandating that she be isolated from secondary smoke.
 
 
 14
 Soon after the district court's decision, however, this court in Hunt v. Reynolds, 974 F.2d 734 (6th Cir.1992), reversed a summary judgment granted to prison officials on a similar claim brought under 42 U.S.C. § 1983 by two state prisoners. Those plaintiffs charged that they had been double-celled with smokers, despite having pre-existing medical conditions that were exacerbated by tobacco smoke.
 
 
 15
 Furthermore, the Supreme Court recently recognized the Eighth Amendment implications of ETS in prisons in Helling v. McKinney, 113 S.Ct. 2475 (1993). There, the Court held that a prisoner had stated a cause of action under the Eighth Amendment "by alleging that [prison officials had], with deliberate indifference, exposed him to levels of ETS that pose an unreasonable risk of serious damage to his future health." Helling, 113 S.Ct. at 2481. Although the prisoners in both Hunt and Helling had been housed with a smoking cellmate, the holding of Helling is broad enough to apply to Wilson's assertion that the smoking policy at FMC is not enforced and that smoke therefore hovers in her living area.
 
 
 16
 Although Helling and Hunt bolster Wilson's contention that exposure to ETS may, under certain circumstances, infringe her Eighth Amendment rights, she still must allege that defendants were "deliberately indifferent" to the effects that ETS was having on her health. See Helling, 113 S.Ct. at 2481; Estelle, 429 U.S. at 104. A review of Wilson's pleadings reveals that they lack sufficient allegations of deliberate indifference by defendants Ingram and Quinlan at BOP or Attorney General Barr. In her objections to the magistrate judge's report, Wilson alleged only that she had written Ingram, Quinlan, and Barr and received no response and that her request for an administrative remedy had been referred back to the warden. Those facts are inadequate to suggest that the national defendants were aware of her serious medical needs and were deliberately indifferent to those needs.
 
 
 17
 Wilson asserted that her case manager, defendant Alston-Williams, referred her ETS complaint to someone who had the authority to deal with her concerns. Moreover, she admitted that the unit manager, defendant Harliss, did take steps to enforce the smoking policy by directing inmates to smoke only in designated areas. These facts do not provide an arguable basis for a legal conclusion that these defendants were deliberately indifferent to Wilson's ETS-induced health problems.
 
 
 18
 Only as to Warden Margaret Hambrick would the facts alleged in the complaint arguably support a conclusion of deliberate indifference. Wilson charged that even after being directed by Harliss to adhere to the smoking policy, inmates continued to smoke in prohibited areas. She added that she had written the warden several times, and that the warden told Wilson she had been assured that the policy was being enforced. Wilson responded that with only one officer in a unit of 300 inmates, any enforcement was ineffectual. In addition, Wilson said that she described to the warden the symptoms she was suffering due to ETS exposure, but the warden refused her request to be moved away from smokers. These factual allegations, if true, would support an argument that the warden at FMC was deliberately indifferent to Wilson's reactions to tobacco smoke. Accordingly, under Helling, the claim against warden Margaret Hambrick was not frivolous.
 
 
 19
 Beyond the bare allegation that there is asbestos and lead paint at FMC, neither Wilson's complaint nor objections to the report of the magistrate judge contain assertions that she ever complained to prison officials about these conditions. As a result, defendants could not have acted with deliberate indifference to the effects of asbestos or lead paint, and this claim lacks an arguable basis in law. We therefore affirm the district court's dismissal of the Eighth Amendment claim based upon the presence of asbestos and lead-based paint at FMC.
 
 III.
 
 20
 As for her equal protection claim, Wilson failed to assert that the men and white persons whom she claimed BOP treated favorably were similarly situated. See, e.g., Reed v. Reed, 404 U.S. 71, 76 (1971) (equal protection requires that " 'all persons similarly circumstanced shall be treated alike' ") (quoting F.S. Royster Guano Co. v. Virginia, 253 U.S. 412, 415 (1920)). In citing the examples of Leona Helmsley and another white inmate at FMC, Wilson did not assert that the crime for which she was convicted, or her security classification, or her behavior while incarcerated, were so similar to that of these two women that her wait for camp placement should have been no longer than theirs. Moreover, Wilson's pleadings contain no specific examples of similarly situated men treated differently at other institutions.[2] Consequently, her discrimination claim failed to provide a legal basis for an action claiming violation of the equal protection component of the Fifth Amendment, and we affirm the district court's dismissal of this claim.
 
 IV.
 
 21
 The district court's dismissal of Wilson's Eighth Amendment claim based upon exposure to asbestos and of her equal protection claim is affirmed. The dismissal of the Eighth Amendment cause of action concerning the adverse health effects from exposure to ETS is affirmed as to all defendants except Margaret Hambrick, warden of FMC, as to whom the dismissal is reversed and the cause remanded for further proceedings consistent with this opinion.
 
 
 
 [1]
 That section permits the district court to dismiss a complaint brought in forma pauperis if "the allegation of poverty is untrue, or if satisfied the action is frivolous or malicious." 28 U.S.C. § 1915(d). If the court determines a pro se complaint is frivolous within the meaning of § 1915(d), it may dismiss the complaint sua sponte and before service of process on defendants. Brooks v. Seiter, 779 F.2d 1177, 1179 (6th Cir.1985)
 
 
 [2]
 In discussing her claim of discriminatory restrictions on inmates' movement, Wilson did note in her objections to the magistrate judge's report that only FMC Lexington has a 24-hour controlled movement policy. Such an allegation does not support an equal protection claim, however, since it implies that whites at FMC are also subject to constant restriction on their movement and that women at other institutions do not face such restrictions